UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MATTHEW CORZINE,<br><br>                  Plaintiff,<br>    v.<br><br>ADAM LAXALT; JAMES WRIGHT; NATALIE WOOD; PATRICK CONMAY; AND K. LOMPREY,<br><br>                  Defendants. | Case No. 3:17-cv-00052-MMD-WGC<br><br>ORDER<br><br>(Def.'s Motion to Dismiss – ECF No. 10; Plaintiff's Motion for a Preliminary Injunction -- ECF No. 26) |

## I. SUMMARY

Plaintiff Matthew Corzine ("Corzine") is suing various Nevada state officials in their official capacities, alleging that aspects of Nevada's program of lifetime supervision violate the state and federal constitutions. Before the Court are Defendant's Motion to Dismiss (ECF No. 10) and Corzine's Motion for a Preliminary Injunction (ECF No. 26.) The Court has reviewed the parties' respective responses and replies. (ECF Nos. 25, 29, 30, 34.) The Court also granted Corzine's Emergency Motion Seeking an Expedited Hearing and Ruling (ECF No. 35) and held a hearing on July 11, 2017 (ECF No. 40). After the hearing, the Court directed the parties to file supplemental briefing on two issues. (ECF No. 42.) The Court has reviewed the supplemental briefs. (ECF Nos. 43, 44.) For the reasons discussed below, Defendants' Motion to Dismiss is granted in part and denied in part, and Corzine's Motion for a Preliminary Injunction is granted in part and denied in part.

## II. BACKGROUND

### A. Corzine's Sentence

The parties, for the most part, agree on the underlying facts. Corzine was charged with six counts of sexual assault on July 22, 2005, for crimes he committed in 2004. He

pled guilty to five counts of attempted sexual assault and was sentenced to 36 to 120 months on one count and 24 to 120 months on each remaining count. (ECF No. 5 at 11.) The sentencing court also imposed a special sentence of lifetime supervision "to commence upon release from any term of imprisonment, probation or parole" and ordered Corzine to register as a sex offender in accordance with NRS § 179D.460 within 48 hours of release from custody. (ECF No. 10-1 at 2-3.)

Corzine was paroled on November 28, 2016, after serving 11 years in prison. (ECF No 25-1 at 4.) Before he was released, Corzine transferred his parole to California through the Interstate Compact for the Supervision of Adult Offenders ("Interstate Compact") – a mechanism through which states "manage the movement between states of adults placed under community supervision and released to the community under the jurisdiction of courts, paroling authorities, corrections or other criminal justice agencies." NRS § 213.215. Corzine completed his parole in California, where he currently resides, in May 2017. (*Id.* at 5.)

On May 13, 2017, he appeared before the Nevada Board of Parole Commissioners ("Parole Board"), the body that sets conditions of lifetime supervision. The Parole Board imposed a monthly fee of $30, which was subject to a waiver for economic hardship, and three residency restrictions: (1) Corzine may only reside at a residence if it has been approved by his parole and probation officers; (2) he may not reside at a residence that houses three or more persons that have been released from prison unless it is a licensed transitional living facility; and (3) he must keep his parole and probation officers informed of his current address.[1] (ECF No. 29-1.)

However, because Corzine is living in California, and, he alleges, because of a legislative change made by Nevada in 2005 (discussed further below), Corzine is not simply subject to the lifetime supervision requirements imposed by the Parole Board.

///

---

[1] The Parole Board also included a provision requiring Corzine to be electronically monitored, but that condition was removed in an updated order a few weeks later. (*Compare* ECF No. 25-3 with ECF No. 29-1.)

Instead, he is subjected to a long list of parole restrictions imposed by the State of California. (ECF No. 26-12.) California's parole supervision includes elements like a GPS ankle bracelet, warrantless searches, and polygraph examinations. (ECF No. 26-1 at 7.) Corzine must comply with these conditions as long as he resides in California. Many of these restrictions do not appear in the list of conditions the Nevada Parole Board may impose under NRS § 213.1243.

### B. Lifetime Supervision

In 1995, Nevada began imposing a special sentence of lifetime supervision on certain offenders. NRS § 176.0931 instructs courts to include lifetime supervision in the sentence of a defendant convicted of a sexual offense. Lifetime supervision begins after an offender is released from probation, imprisonment, or parole. It is governed by NRS § 213.1243, which in 2004, when Corzine committed the relevant crimes, provided:

> 1. The Board shall establish by regulation a program of lifetime supervision of sex offenders to commence after any period of probation or any term of imprisonment and any period of release on parole. The program must provide for the lifetime supervision of sex offenders by parole and probation officers.
> 2. Lifetime supervision shall be deemed a form of parole for the limited purposes of the applicability of the provisions of NRS 213.1076, subsection 9 of NRS 213.1095, NRS 213.1096 and subsection 2 of NRS 213.110.
> 3. A person who violates a condition imposed on him pursuant to the program of lifetime supervision is guilty of a category B felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years, and may be further punished by a fine of not more than $5,000.

Thus, the statute did not list any specific conditions of supervision. Rather, it delegated the authority to design the lifetime supervision program to the Parole Board. At the time, the Parole Board required offenders under lifetime supervision to, among other things, obtain permission before leaving the state, obtain a supervising officer's approval for the location of the offender's residence, submit to polygraph examinations, and submit to warrantless searches. (*See* ECF No. 44-1; *Palmer v. State*, 59 P.3d 1192, 1196 (Nev. 2002) (listing common restrictions).)

///

///

In 2007, the statute was amended by Senate Bill 354 ("SB 354") and Senate Bill 471 ("SB 471") to include a number of specific conditions that Courts "shall" impose, including the following condition, which was eventually applied to Corzine:

> 3. Except as otherwise provided in subsection 4, the Board shall require as a condition of lifetime supervision that the sex offender reside at a location only if:
> (a) The residence has been approved by the parole and probation officer assigned to the person.
> (b) If the residence is a facility that houses more than three persons who have been released from prison, the facility is a facility for transitional living for released offenders that is licensed pursuant to chapter 449 of NRS.
> (c) The person keeps the parole and probation officer informed of his current address.

2007 Nevada Laws Ch. 418 (S.B. 354); 2007 Nevada Laws Ch. 528 (S.B. 471).

In 2016, the Nevada Supreme Court ruled that the Parole Board could not impose conditions beyond those listed in NRS § 213.1243. *McNeill v. State*, 375 P.3d 1022, 1025 (Nev. 2016).

### C. The Interstate Compact

In 2001, Nevada passed legislation adopting the Interstate Compact, which in turn became active in June of 2002, after it had been accepted by 35 states. *See* 2001 Nevada Laws Ch. 460 (S.B. 194).[2] The Interstate Compact is an agreement among states to work together to supervise offenders who are "under the jurisdiction of courts, paroling authorities, corrections or other criminal justice agencies." NRS § 2113.215. It applies, for example, if an offender from Nevada would like to move to California to live with family while on parole. The state receiving an offender is required to supervise him or her "consistent with the supervision of other similar offenders sentenced in the receiving state, including the use of incentives, corrective actions, graduated responses, and other

///
///
///

---

[2] *See also* INTERSTATE COMMISSION FOR ADULT OFFENDER SUPERVISION, ICAOS BENCH BOOK FOR JUDGES AND COURT PERSONNEL 38 (2017).

4

supervision techniques." Interstate Compact Rule 4.101.[3] Furthermore, Rule 4.103 provides:

> (a) At the time of acceptance or during the term of supervision, the receiving state may impose a condition on an offender if that condition would have been imposed on an offender sentenced in the receiving state.
>
> (b) A receiving state shall notify a sending state that it intends to impose, or has imposed, a condition on the offender.
>
> (c) A sending state shall inform the receiving state of any conditions to which the offender is subject at the time the request for transfer is made or at any time thereafter.
>
> (d) A receiving state that is unable to enforce a condition imposed in the sending state shall notify the sending state of its inability to enforce a condition at the time of request for transfer of supervision is made.[4]

INTERSTATE COMMISSION FOR ADULT OFFENDER SUPERVISION, ICAOS RULES 4.103 (2017).

In 2005, to ensure that other states would be willing to accept Nevada offenders under the Interstate Compact, the legislature amended NRS § 213.1243 and mandated that lifetime supervision would be deemed a form of parole for "[t]he purposes of the Interstate Compact for Adult Offender Supervision ratified, enacted and entered into by the State of Nevada pursuant to NRS § 213.215." Senate Bill 341 ("SB 341").

Corzine argues, among other things, that changing the definition of lifetime supervision to parole for the purposes of the Interstate Compact amounts to a retroactive increase in his sentence, and therefore a violation of the Ex Post Facto Clause of the United States Constitution. He further argues that the Nevada Supreme Court's decision in *McNeill* essentially renders lifetime supervision before the legislature added specific conditions to NRS § 213.1243 unenforceable.

### III. MOTION TO DISMISS

Defendants ask the Court to dismiss Corzine's Complaint in its entirety. They argue that Corzine has failed to identify any state action subject to suit under 18 U.S.C. § 1983,

///

---

[3] INTERSTATE COMMISSION FOR ADULT OFFENDER SUPERVISION, ICAOS RULES 40 (2017).

[4] *Id.* at 42.

5

that he has failed to name the proper defendants, and that his claims fail as a matter of law.

### A.     Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]— that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory."

*Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

Pro se complaints, like Corzine's, are held to less stringent standards than pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This is particularly true when a pro se litigant is alleging civil rights violations. *See Karim–Panahi v. Los Angeles Police Dep't*, 839F.2d 621, 623 (9th Cir.1988) ("In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt.").

### B. Discussion

#### 1. Lifetime Supervision Conditions

As an initial matter, because Corzine filed suit before the Parole Board actually imposed any conditions, some of his allegations are no longer relevant. To the extent possible, the Court will consider Corzine's claims in light of the conditions the Parole Board actually imposed, namely a monthly fee and requirement that his residence be approved by his supervising officer.

##### a. Procedural Due Process

Corzine alleges that the 1997 version of NRS § 213.1243 is void for vagueness because it creates a punishment for violating any conditions imposed by the Parole Board but does not (or did not at the time) spell out any specific conditions. (ECF No. 5 at 4.) This allegation misstates how the statute actually functions. Corzine could not have been punished for violating any conditions until *after* they had actually been imposed, thereby giving him sufficient notice of the prohibited conduct.

Corzine also alleges that NRS § 213.1243 does not provide an adequate hearing before the Parole Board. (*Id.*) Defendants correctly argue that the Parole Board itself is the proper defendant if Corzine wants to challenge the specific provisions of the Parole Board's hearing and appeal process. The Court agrees and grants Defendants' Motion with respect to Count I. The claim is dismissed without prejudice and Corzine is granted leave to amend.

### b. Substantive Due Process

In his Complaint, Corzine simply alleges that the conditions "that will be imposed by the Board under NRS 213.1243 will infringe on Mr. Corzine's fundamental rights to travel and live with his family." (ECF No. 5 at 12.) Because the Parole Board had not actually imposed any conditions when Corzine filed his Complaint, he does not allege facts related to any specific condition, or explain how any condition actually hinders the rights he identifies. Even if the Court considers the conditions actually imposed, Corzine's claim is simply a legal conclusion and does not meet the *Twombly* standards for particularity. Therefore, Defendants' Motion is granted in regard to Count II, which will be dismissed without prejudice and with leave to amend.

### c. First Amendment

Once again, Corzine's First Amendment claim was premised on hypothetical conditions that could have been imposed. It is not immediately apparent how the actual conditions imposed could support a First Amendment challenge. Furthermore, Corzine's allegations that any restrictions "will prohibit [him] from associating with certain people in certain areas" is once again simply a legal conclusion and insufficient under *Twombly*. (ECF No. 5 at 13.) Corzine's First Amendment claim (Count III) is therefore also dismissed without prejudice and with leave to amend.

### d. Equal Protection Clause

Corzine alleges that Nevada treats offenders like him differently than offenders who were sentenced before the enactment of lifetime supervision in 1995, and that this practice violates the Equal Protection Clause of the Fourteenth Amendment. (ECF No. 5 at 13-15.) Corzine's allegations do not support such a claim. The Equal Protection Clause is not implicated simply because a law affects two groups differently. As long as the distinction has a rational basis (or in the case of certain categories of citizens, passes more demanding standards), there is "no constitutional concern." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 271–72 (1979). Corzine has not alleged facts showing Nevada lacks a rational basis for its actions, or that he is the member of a protected group, which

would require Nevada to show a stronger justification for its policies. Therefore, his Equal Protection Clause claim (Count IV) is also dismissed without prejudice and with leave to amend.

### e. Eighth Amendment

Corzine alleges that the punishment for violating a condition of lifetime supervision — up to 6 years' imprisonment and a $5,000 fine — is so disproportionate to the "actual condition violated" that it violates the Eight Amendment's prohibition on cruel and unusual punishment. (ECF No. 5 at 14-15.) The Eighth Amendment applies to punishments that are grossly disproportionate to the crime being punished. *Harris v. Wright*, 93 F.3d 581, 583 (9th Cir. 1996) (citing *Harmelin v. Michigan*, 501 U.S. 858, 113 (1991) (Kennedy, J. concurring)). This legal theory, however, is "strictly circumscribed" and only applicable where a "threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id*. This is not such a case. As Defendants point out, the penalty Corzine challenges is comparable to the penalty for failing to register as a sex offender in Nevada and similar to analogous statutes in states from Alaska to Tennessee. (ECF No. 10 at 18.) Corzine cannot make a threshold showing that the penalty for violating a condition of lifetime supervision supports an inference of gross disproportionality. Therefore, his Eighth Amendment claim (Count V) is legally foreclosed and will be dismissed with prejudice.

### f. Double Jeopardy/Ex Post Facto/Separation of Powers/Bill of Attainder

Corzine alleges that the 2007 amendments to NRS § 213.1243 amount to a retroactive increase of his sentence in violation of the Double Jeopardy Clause of the Fifth Amendment and the Ex Post Facto Clause. (ECF No. 5 at 15-16.) Because the amendments, and indeed the conditions eventually imposed on Corzine, are all conditions that were previously imposed by the Parole Board (*see* ECF No. 44-1), Corzine's claim depends on the premise that NRS § 213.1243 cannot be applied to him because the Nevada Supreme Court's decision in *McNeill* retroactively rendered it unenforceable

(which is also the basis for his separation of powers claim — Count IX — and his bill of attainder claim — Count X). In other words, Corzine argues that *McNeill* created a sentencing windfall for offenders like him, who committed their crimes before the statute contained any enumerated conditions. This argument is ultimately unpersuasive because the only conditions applied to Corzine are conditions later enacted by the legislature. Therefore, Corzine is not subject to any conditions suffering the statutory and constitutional infirmities identified in *McNeill*. Corzine is proffering two incompatible arguments at once. He asks the Court to hold both that the legislative amendments adding specific provisions are impermissible ex post facto punishments, and that the statute, as applied to him, impermissibly bypasses the legislature, nullifying any conditions. In this case, neither argument is true. The amendments at issue cure the very problem Corzine argues invalidates the 1997 version of the statute, and the conditions imposed upon him by the Parole Board do not retroactively increase his punishment.

Defendants' Motion is granted with respect to these claims, and Corzine's ex post facto, double jeopardy, separation of powers, and bill of attainder claims (Counts VI, VII, IX, and X) are dismissed with prejudice as they relate to the 2007 amendments to NRS § 213.1243.

### g.     Contracts Clause

Corzine alleges that the 2007 legislative changes, which occurred after he pled guilty, imposed conditions inconsistent with his plea agreement, and therefore interfered with the agreement in violation of the Contracts Clause of the Constitution. (ECF No. 5 at 16-17.) Once again, this line of argument is incorrect because the only conditions imposed upon Corzine are conditions which the Parole Board also imposed when Corzine accepted his plea. Defendants' Motion is granted with respect to Corzine's Contracts Clause claim (Count VIII), and the claim is dismissed with prejudice.

///

///

///

### 2. Change from Lifetime Supervision to Parole for the Purposes of the Interstate Compact

Corzine's final argument is that the state violated the ex post facto clause by treating his special sentence of lifetime supervision as parole under the Interstate Compact (Count VII). (ECF No. 5 at 3, 6, 11-12, 16.) The Court finds that Corzine has alleged facts which, if true, support a plausible claim that the Nevada legislature enacted a change that had a punitive effect and retroactively increased the punishment for his crime, which may violate the ex post facto clause of the United States Constitution.

Defendants argue that Corzine has failed to name the correct defendants for any of his claims. (ECF No. 10 at 9-10.) The Court disagrees. Corzine alleges that Nevada's decision to define lifetime supervision as "parole" for purposes of the Interstate Compact means that he must face demonstrably harsher penalties for his crime because California now treats him as a parolee rather than an offender on lifetime supervision. He is suing James Wright, Director of the Nevada Department of Public Safety, and Natalie Wood, Chief of the Division of Parole and Probation, in their respective official capacities. (ECF No. 5 at 2.) The Division of Parole and Probation is a division of the Department of Public Safety. NRS § 213.1071. The Division of Parole and Probation houses an Interstate Compact Unit, which is tasked with facilitating "the transfer of offender supervision into and out of the state of Nevada, and is responsible for ensuring that the federal compact rules are followed."[5] The responsibility for moving offenders from Nevada to other states under the Interstate Compact falls squarely within the responsibilities of these two defendants, consequently they are proper parties for Corzine's request for injunctive relief as it relates to Nevada's change to the treatment of lifetime supervision and the Interstate Compact.

///
///

---

[5] *Federal Interstate Compact*, NEVADA DEPARTMENT OF PUBLIC SAFETY: PAROLE AND PROBATION, http://npp.dps.nv.gov/Programs/Federal_Interstate_Compact/ (last visited July, 21 2017).

For these reasons, Defendants' Motion is denied with respect to Corzine's ex post facto claim (Count VII) against Wright and Wood.

### C. Summary

Defendants' Motion to Dismiss (ECF No. 10) is granted on all counts except Corzine's ex post facto claims against Wright and Wood (Count VII), in their official capacities, relating to the 2005 amendments defining lifetime supervision as a form of parole for the Interstate Compact. Defendants Laxalt, Conmay, and Lomprey are dismissed from this action.

Corzine's procedural due process claim (Count I), substantive due process claim (Count II), First Amendment claim (Count III). and Equal Protection Clause claim (Count IV) are dismissed without prejudice and with leave amend. If Corzine chooses to amend any of these claims, he is advised that the Parole Board is the proper defendant for the relief he seeks.

Corzine's Eight Amendment claim (Count V), double jeopardy claim (Count VI), the portion of his ex post facto claim relating to the lifetime supervision amendments (Count VII), Contracts Clause claim (Count VIII), separation of powers claim (Count IX), and bill of attainder claim (Count X), are dismissed with prejudice.

## IV. MOTION FOR PRELIMINARY INJUNCTION

The Court will evaluate Corzine's Motion based on his sole remaining claim — that defining lifetime supervision under NRS § 213.1243 as parole for the purposes of the Interstate Compact impermissibly increases his sentence in violation of the Ex Post Facto Clause of the United States Constitution.

### A. Legal Standard

"'An injunction is a matter of equitable discretion' and is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 32 (2008)). To qualify for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable

harm; (3) that the balance of equities favors the plaintiff; and (4) that the injunction is in the public interest. *Winter*, 555 U.S. at 20.

Alternatively, in the Ninth Circuit, an injunction may issue under a "sliding scale" approach if there are serious questions going to the merits and the balance of equities tips sharply in the plaintiff's favor. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). The plaintiff, however, must still show a likelihood of irreparable harm and that an injunction is in the public interest. *Id.* at 1135. "[S]erious questions are those 'which cannot be resolved one way or the other at the hearing on the injunction.'" *Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 926-27 (9th Cir. 2003) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). They "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Marcos*, 862 F.2d at 1362 (quoting *Nat'l Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985)).

**B.    Discussion**

**1.    Success on the Merits / Serious Questions Going to the Merits**

The Ex Post Facto Clause of the United States Constitution prohibits state and federal governments from retroactively imposing additional punishment on a criminal defendant after the commission of an offense. U.S. Const. art. I, §§ 9, cl. 3.[6] In evaluating an ex post facto claim, the Court must first determine whether the legislature intended to impose a criminal punishment. *Smith v. Doe,* 538 U.S. 84, 92 (2003). The parties agree that this is not the case, so the Court moves on to the second step of the inquiry: determining whether the law is "so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id.* (internal quotation marks and alteration omitted).

///
///

---

[6]The Double Jeopardy Clause provides an alternate theory to address the same problem. *See Am. Civil Liberties Union of Nevada v. Masto*, 670 F.3d 1046, 1052-53 (9th Cir. 2012) ("Under both constitutional clauses, courts apply the identical two-step test to determine whether a newly enacted legislative scheme constitutes an additional form of punishment.").

13

In *Smith*, the Supreme Court outlined five of the "*Mendoza–Martinez* factors," to determine the punitive effect of a statute. 538 U.S. at 97 (citing *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168-69 (1963)). Those five factors are the degree to which the regulatory scheme imposes a sanction that (1) has historically been regarded as punishment; (2) constitutes an affirmative disability or restraint; (3) promotes the traditional aims of punishment; (4) is rationally connected to a nonpunitive purpose; and (5) is excessive in relation to the identified nonpunitive purpose. *Id.* at 98. These factors, however, are neither exhaustive nor dispositive; they only provide a framework for the analysis. *Id.*

The Court addresses these factors in turn below.

### a. Historically Regarded as Punishment / Traditional Aims of Punishment

Unlike lifetime supervision, parole is part of a sentence of imprisonment. *See* NRS § 213.110 ("[A parolee] may be allowed to go upon parole outside of the buildings or enclosures, but [remains], while on parole, in the legal custody and under the control of the Board and subject at any time to be taken within the enclosure of the state prison."); PAROLE, Black's Law Dictionary (10th ed. 2014). The Nevada Supreme Court has made clear that lifetime supervision is different from parole in important ways. Notably, an offender on parole is still serving his sentence of imprisonment for the purposes of a habeas petition. *See Coleman v. State*, 321 P.3d 863, 866 (Nev. 2014). Moreover, a violation of a condition of lifetime supervision is a new crime, which entitles the offender to all of the procedural protections that accompany a criminal charge. *Palmer v. State*, 59 P.3d 1192, 1196 (Nev. 2002).

There is little question that parole has historically been regarded as one aspect of punishment for committing a criminal offense and that it is part of a sentence of imprisonment serving the traditional aims of punishment. In fact, the Nevada Supreme Court recognized this important distinction between parole and lifetime supervision. *See Coleman,* 321 P.3d at 866.

### b. Affirmative Disability or Restraint

The contrast in the conditions imposed on Corzine as a parolee by California and the conditions imposed on him as an offender on lifetime supervision by the Nevada Parole Board underscores Corzine's contention that the parole conditions are disabling. California imposes over 100 parole conditions, whereas Nevada imposed three residency restrictions as conditions of lifetime supervision. (*Compare* ECF Nos. 26-12; 34-4 *with* ECF No. 29-1.)[7] Moreover, by treating lifetime supervision as a form of parole for purposes of the Interstate Compact, NRS § 213.1243 effectively extended the length of Corzine's parole.

Defendants argue that defining lifetime supervision as parole for the Interstate Compact is not punitive because the purpose of the legislative change, and of the compact generally, is to allow offenders like Corzine to relocate to other states. (ECF No. 30 at 12-13.) In other words, they argue that far from imposing restraints, the change actually lessens the harshness of Corzine's punishment. Based on the limited record before it, the Court does not find this characterization accurate.

The Interstate Compact was in place in 2004, when Corzine committed the crimes at issue. Presumably, offenders like him could take advantage of it to transfer their parole or lifetime supervision to states like California at that time. In fact, Defendants have provided a copy of the Department of Public Safety's Parole and Probation Division Policy and Procedural Manual from 2003. (ECF No. 44-2.) The manual clearly states that "[o]ffenders shall be allowed to transfer via the Interstate Compact." (*Id.* at 4.) The change Corzine alleges retroactively increased his sentence—treating lifetime supervision as a form of parole—did not take place until 2005.

Furthermore, the information provided by Defendants appears to support the Court's presumption of transfer of offenders to other states. In its order for supplemental

///

---

[7]The Court does not suggest that the Parole Board may not modify Corzine's conditions while he is on lifetime supervision. However, the conditions that the Parole Board may impose are enumerated in the state statute. *See* NRS § 213.1243

briefing, the Court asked the parties to point to any source of law which supports the argument that offenders in Corzine's position would not have been able to leave the state while under lifetime supervision in 2004. (ECF No. 42.) In response, Defendants argued that the creation of lifetime supervision in 1995 gave the Parole Board the authority over where an offender may establish residency, thereby giving them authority over whether an offender could establish residency outside of the state. (ECF No. 44 at 1-2.) Defendants also provided examples of lifetime supervision conditions imposed on offenders in 2001, 2003, and 2004. (ECF No. 44-1.) Each of those offenders were required to obtain approval from their supervising officer for any out of state travel and for the location of their residence.

At this early stage in the litigation, the evidence before the Court indicates that offenders in 2004 were: 1) entitled to take advantage of the Interstate Compact to relocate to other states; 2) subjected to the restriction that their residence must be approved by a supervising officer; and 3) subjected to the restriction that travel out of state must be approved by a supervising officer. It is not clear, as the Defendants argue, that offenders like Corzine were unable to relocate out of state before the 2005 change to NRS § 213.1243. And therefore, it is not clear, as Defendants further argue, that the 2005 change simply opened up more possibilities for offenders like Corzine.

### c.  Relation to a Nonpunitive Purpose

Defendants argue that the change in lifetime supervisions as parole was meant to be a "procedural" fix to facilitate moving offenders through the Interstate Compact. (ECF No. 30 at 13.) However, even accepting the nonpunitive justification for the change, it still subjects offenders like Corzine to the heightened restrictions of a lifetime on parole, and therefore its punitive affects are excessive in relation to its nonpunitive purpose.

In sum, based on Corzine's allegations and the limited evidence before the Court, it appears that the effect of the 2005 change has been to subject Corzine to the many conditions of California parole rather than the limited conditions of Nevada's lifetime supervision. At the very least, Corzine has raised serious questions going to the merits in

regards to the proper understanding of how the 2005 amendment functions for offenders in his position.

### 2.  Irreparable Harm

Corzine argues that he is being subjected to a number of conditions that restrict his ability to travel, use social media, and go through the day free from warrantless searches. (ECF No. 34 at 21.) Defendants argue that because California has the discretion to determine its own supervision conditions under the Interstate Compact, Corzine may be subjected to more onerous conditions than those listed in NRS § 213.1243 simply by choosing to live in California. (ECF No. 30 at 16.) At this stage Corzine has alleged, and Defendants have not argued or provided evidence to the contrary, that he is only being subjected to the long list of restrictions he currently faces because of Nevada's 2005 amendment to NRS § 213.1243. (ECF No. 25-1 at 9.)

As Corzine describes in his Emergency Motion, absent an injunction he will be subjected to, among other things, a polygraph test during which he must waive any Fifth Amendment right against self-incrimination, warrantless searches, and strict travel restrictions. (ECF No. 35.) In fact, since the July 11, 2017, hearing, Corzine has been arrested for violating the conditions of his California parole. (ECF No. 45.) It is clear that absent and injunction Corzine will suffer irreparable harm.

### 3.  Balance of Equities

An injunction would simply require Defendants to inform their California counterparts that they are not required to treat Corzine as a parolee, and should rather apply the Interstate Compact as it was applied before the legislative change. An injunction would prevent Corzine from being subjected to dozens of potentially unlawful restrictions and remove the corresponding threat of arrest and jailing. The Court finds that the balance of equities tips sharply in Corzine's favor.

### 4.  Public Interest

Corzine will remain under some form of supervision under an injunction, assuaging any public safety concerns. Furthermore, preventing a violation of constitutional law is in

the public's interest. *See United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011), *aff'd in part, rev'd in part and remanded*, 567 U.S. 387 (2012).

### C. Summary

The Court finds that Corzine has shown he is entitled to an injunction under the criteria discussed in *All. for the Wild Rockies v. Cottrell*. Corzine has identified serious questions going to the merits of his ex post facto claim, has shown that the balance of equities tips sharply in his favor, and an injunction does not cut against the public interest. Therefore, the Court will grant his Motion in the following limited fashion: Defendants Wright and Wood are ordered to coordinate with California authorities in order to clarify that Corzine's lifetime supervision should be consistent with the pre 2005 version of NRS § 213.1243 — specifically, California cannot treat Corzine's lifetime supervision as parole.

The injunction does not mean that Corzine is free from any supervision. Nevada retains the authority to impose lifetime supervision consistent with *McNeill*, and California is free to impose restrictions consistent with Corzine's sentence and the Interstate Compact.

## V. CONCLUSION

It is hereby ordered that Defendants' Motion to Dismiss (ECF No. 10) is granted in part and denied in part.

It is ordered that Defendants Laxalt, Conmay, and Lomprey are dismissed.

It is further ordered that Counts I, II, III, and IV are dismissed without prejudice and with leave to amend.

It is further ordered that Counts V, VI, VIII, IV, and X are dismissed with prejudice.

It is further ordered that the portion of Count VII relating to 2007 amendments to NRS § 213.1243 is dismissed with prejudice.

If is further ordered that Corzine's Motion for Preliminary Injunction (ECF No. 26) is granted in part and denied in part. Corzine's Motion is granted in the following manner: Defendants Wright and Wood are ordered to coordinate with the California authorities responsible for administering the Interstate Compact in order to make clear that California

1  cannot treat Corzine's sentence of lifetime supervision as parole, and may instead impose
2  the restrictions it sees fit based on Corzine's actual lifetime supervision conditions and the
3  Interstate Compact.
4      If Corzine chooses to amend his complaint to cure the deficiencies identified with
5  respect to Counts I, II, III and IV, he must file an amended complaint no later than thirty
6  (30) days from the entry of this order. If Corzine chooses not to file an amended complaint,
7  these remaining claims will be dismissed with prejudice.
8      DATED THIS 25th day of July 2017.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE